# Illinois Official Reports

## Appellate Court

---

### *People v. Porter*, 2014 IL App (1st) 123396

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAWN PORTER, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-3396 |
| Filed | November 12, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction for retail theft, the trial court rejected defendant's contention that the circumstances warranted a remand for consideration of her *pro se* posttrial allegations of ineffective assistance of counsel under *Krankel*, since her claim that her counsel was ineffective in refusing to follow her suggestion that an argument should have been raised that the video tape presented by the store security "wasn't telling the truth" because the "whole tape" was not played was not sufficiently specific to warrant further inquiry under *Krankel*; however, the circuit court clerk was directed to vacate the DNA analysis fee in view of the fact that defendant was already registered in the DNA database. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-8898; the Hon. John Joseph Hynes, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; fines and fees order corrected. |

Counsel on
Appeal

Michael J. Pelletier and Jessica D. Pamon, both of State Appellate
Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Whitney Bond,
Assistant State's Attorney, of counsel), for the People.

Panel

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Lavin and Mason concurred in the judgment and opinion.

## OPINION

¶ 1    Following a bench trial, defendant, Dawn Porter, was found guilty of retail theft and sentenced to a four-year prison term. On appeal, Porter contends that the cause should be remanded for consideration of her *pro se* posttrial claims of ineffective assistance of trial counsel under *People v. Krankel*, 102 Ill. 2d 181, 187-89 (1984). We find Porter's ineffective assistance of counsel claim insufficiently specific to support the duty to conduct further inquiry under *Krankel*. Porter also contends that the $250 DNA fee imposed by the court must be vacated and we agree.

¶ 2                                    Background
¶ 3    At trial, Omar Ferreira testified that on March 7, 2012, he was working the 11 a.m. to 8 p.m. shift as a loss prevention agent at the Wal-Mart store in Bridgeview, Illinois. When he arrived at the store about 11 a.m., he saw Dawn Porter carrying a plastic bag in the infant department. She appeared to be "anxious" and "nervous" and was looking around and shaking. Ferreira walked to the back of the store to "clock in" for the day, and when he returned to the infant department, Porter was gone.

¶ 4    Ferreira then went to his office, activated the store's surveillance cameras, and rewound the existing footage to find Porter. While watching that footage from multiple cameras with varying viewpoints, Ferreira saw Porter pick up a box containing a baby cradle swing and place it into her shopping cart. He then observed her as she pushed the shopping cart with the large box inside of it through the lingerie department and toward the men's department, before heading to the customer service desk. After collecting this information, Ferreira called Sarah Troutman, the service desk associate, who told him that Porter had returned merchandise without a receipt. Ferreira then ran toward the exit and introduced himself to Porter. She accompanied him to his office, where Ferreira recovered a Wal-Mart gift card from Porter. The surveillance videos were played for the court, and defendant's actions were narrated by Ferreira.

¶ 5    Sarah Troutman testified that she was working as a customer service agent at the Wal-Mart service desk, where she processed customer returns, refunds, and exchanges. Porter approached her register with a baby swing and asked to return the item. Porter did not have a receipt for the item, so Troutman scanned the item and asked for identification, which was the

ordinary policy for returns of merchandise over $100 without a receipt. Porter produced an identification card (ID), and Troutman scanned the item again and placed the value of the item on a gift card. Because the item was valued at over $50, Troutman had to call a supervisor, who completed an "override" using a key to approve the refund. Porter then signed "the slip" and Troutman returned the ID and gift card to defendant. After Porter walked away, Troutman received a phone call from Ferreira asking her about the transaction. Troutman told him that Porter had a return without a receipt on a baby swing. On cross-examination, Troutman explained that there was no way to check an item's "history" by scanning the bar code at the store.

¶ 6        Jaylah Noel testified for the defense that she and Porter, her friend, were going to attend a baby shower on March 7, 2012. They took a bus to the Bridgeview Wal-Mart, where they purchased the baby swing as a gift. When the cashier asked Noel if she wanted a receipt, Noel declined, and the cashier threw the receipt in the garbage. Noel then received a phone call from someone who told her that another person had already purchased a baby swing for the shower. Because Noel had no ID card, she asked Porter to return the item while she went to look for another gift. Noel made a phone call to arrange a ride from Wal-Mart to the baby shower, and when she went outside to see if that person had arrived, she saw Porter being taken away in handcuffs. She told the authorities and loss prevention employees that she was the original purchaser of the swing, but they did not respond.

¶ 7        At the close of evidence and argument, the court found Porter guilty of retail theft. In doing so, the court found Noel's testimony to be "beyond belief" and "incredible," describing her story as "unlikely convergences of all these unlikely facts that Miss Noel wants us to believe." The court observed that Noel alleged that she bought a baby swing for over $100 without keeping the receipt in case of a later return by the gift's recipient. The court also observed that she "happen[ed] to not have *** an ID and she gets her good friend to go back to return this without even leaving the store or a phone call. And then she, of course, leaves the presence of [defendant] to go looking for a gift." The court further observed that the video did not corroborate her testimony, as it did not show them "hooking up" to arrange the plan to get the gift card.

¶ 8        At the sentencing hearing on October 17, 2012, the court heard argument from the State and defense regarding the appropriate sentence, and Porter stated in allocution:

        "Um, but this, I just didn't feel that I was in the wrong. Um, and I–when I was–I was trying to ask them that, that the tape proved that, that the security wasn't telling the truth. And I asked my attorney to bring it up, and she said–and she–she didn't, she was just like, that, um, that it shows the tape. I says, they're not playing the whole tape, you know what I'm saying. That I made two transactions. And–and I presented a receipt for what I came to the store for. And I was just with [Noel]."

The court responded, "All right," then weighed the relevant factors in aggravation and mitigation. The court determined that Porter was eligible for an extended sentence based on her criminal history and sentenced her to four years' imprisonment.

¶ 9                                    Analysis
¶ 10       Porter does not challenge the sufficiency of the evidence to sustain her conviction. Rather, she contends that the trial court erred in failing to conduct a preliminary inquiry into her claim

of ineffective assistance of counsel, as required by *Krankel*, 102 Ill. 2d at 187-89. Porter requests that her cause be remanded for the purpose of conducting this inquiry.

¶ 11    Under *Krankel*, and its progeny, where a defendant makes a *pro se* posttrial allegation of ineffective assistance of counsel, the trial court should conduct an adequate inquiry into the factual basis of the claim. *People v. Moore*, 207 Ill. 2d 68, 79 (2003). If the court determines that the claim lacks merit or pertains solely to trial strategy, the court need not appoint new counsel and may deny defendant's motion. *Moore*, 207 Ill. 2d at 78. If the court finds possible neglect of the case, new counsel should be appointed. *Moore*, 207 Ill. 2d at 78. Where, as here, the court did not conduct an inquiry into defendant's ineffective assistance claims, we use a *de novo* standard of review. *People v. Walker*, 2011 IL App (1st) 072889-B, ¶ 33.

¶ 12    The pleading requirements for raising a *pro se* claim of ineffectiveness of counsel are somewhat relaxed; however, a defendant must still meet the minimum requirements necessary to trigger a *Krankel* inquiry. *People v. Bobo*, 375 Ill. App. 3d 966, 985 (2007). "A bald allegation of ineffective assistance is insufficient; rather, the defendant should raise specific claims with supporting facts before the trial court is required to consider the allegations." *Walker*, 2011 IL App (1st) 072889-B, ¶ 34 (citing *People v. Radford*, 359 Ill. App. 3d 411, 418 (2005)). Mere awareness by a trial court that defendant has complained of counsel's representation imposes no duty by the trial court to *sua sponte* investigate defendant's complaint. *People v. Cunningham*, 376 Ill. App. 3d 298, 304 (2007).

¶ 13    Porter claims that her conflict with trial counsel was brought to the trial court's attention by her statements in allocution. At that time, Porter asserted that the video showed that "security wasn't telling the truth." She stated that she asked counsel "to bring it up" but counsel said that it was what the tape showed. Porter asserted that "they're not playing the whole tape," which would show that she "made two transactions" and that she was with Noel.

¶ 14    We initially note that Porter made no overt claim of ineffective assistance of counsel, and, instead, the tenor of her remarks reflects her continuing profession of innocence in the matter, rather than an allegation of counsel's incompetence. *People v. Taylor*, 237 Ill. 2d 68, 76-77 (2010). Moreover, due to the rambling nature of her remarks, it is unclear whether she was alleging that additional footage actually existed or whether she merely assumed that there was additional footage that would support her defense. In circumstances where defendant's statements are amenable to more than one interpretation, this court has determined that they are insufficient to require a *Krankel* inquiry. *Taylor*, 237 Ill. 2d at 77.

¶ 15    In any case, the record shows that counsel was aware of the surveillance videos, as they were introduced at trial, and it appears that, at most, Porter disagreed with counsel about what they showed. In these circumstances, the choice of whether to present any additional video evidence would be a matter of trial strategy, which is generally immune from ineffective assistance of trial counsel claims (*People v. Munson*, 206 Ill. 2d 104, 139-40 (2002)), and the trial court would not be required to conduct any inquiry into defendant's complaints (*Moore*, 207 Ill. 2d at 78). For these reasons, we conclude that Porter failed to bring to the trial court's attention a specific claim of ineffective assistance sufficient to trigger the duty to conduct further inquiry under *Krankel* (*Walker*, 2011 IL App (1st) 072889-B, ¶ 37) and there is no cause for remand.

¶ 16    Porter finally claims, the State concedes, and we agree that the trial court's order requiring her to pay a $250 DNA analysis fee should be vacated because she has previously provided a DNA sample. In *People v. Marshall*, 242 Ill. 2d 285, 303 (2011), the supreme court held that

defendant is required to submit a sample and pay the fee only when she is not currently registered in the DNA database. Since Porter already appears in the database, the imposition of a second DNA fee is improper, and, in accordance with *Marshall*, we vacate it.

¶ 17    For the reasons stated, we direct the circuit court clerk to correct the order assessing fines and fees to reflect the vacatur of the DNA analysis fee, and we affirm the judgment of the circuit court of Cook County in all other respects.

¶ 18    Affirmed in part and vacated in part; fines and fees order corrected.