2016 IL App (1st) 141904

SIXTH DIVISION
June 30, 2016
Modified upon denial of rehearing August 12, 2016

No. 1-14-1904

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 9381 |
| | ) | |
| KEVIN HUNTER, | ) | Honorable |
| | ) | Evelyn B. Clay, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Justices Hoffman and Hall concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, defendant, Kevin Hunter, was convicted of armed robbery, aggravated kidnaping, and aggravated vehicular hijacking, and sentenced to concurrent terms of 21 years' imprisonment, which included a 15-year enhancement for defendant's use of a firearm. Defendant, age 16 at the time of the offense, was tried and sentenced as an adult in accordance with the automatic transfer provision set forth in section 5-130 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-130 (West 2010)). On appeal, defendant contends that: (1) the State failed to prove beyond a reasonable doubt that he was armed with a firearm during the charged offenses; (2) the trial court erred in failing to conduct a *Krankel* inquiry; (3) his case should be remanded for resentencing under new provisions contained in Public Act 99-69, section 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105), which took effect during the pendency of his appeal; (4) his case should be remanded for resentencing in the juvenile court under Public Act 99-258, section 5 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130, 5-805 (West 2014)), which

also took effect during the pendency of his appeal; and (5) the mittimus must be corrected to reflect the proper credit for presentence incarceration. For the following reasons, we affirm the judgment of the trial court and order the mittimus corrected.

¶ 2                                    I. BACKGROUND

¶ 3      We set forth the facts necessary to provide background for defendant's first claim of error. Additional facts relevant to other issues on appeal will be included as needed throughout our opinion.

¶ 4      Defendant was charged with aggravated kidnaping, armed robbery, and aggravated vehicular hijacking. At trial, Steven Maxwell, testified that he parked his Jeep on the north side of Chicago at approximately 3:45 a.m. on May 17, 2011, after spending several hours at a bar and drinking one beer. While walking home down a dark street, he was approached by three men, including defendant, who Mr. Maxwell identified in court. One of the men asked Mr. Maxwell: "what you got." Then, defendant "flashed a gun" for a few seconds, pulling it slightly out of his coat and placing it near his chest or stomach. The gun was "squared off" and resembled a "Glock." Mr. Maxwell, who had a Firearm Owner's Identification (FOID) card and had previously seen a real gun, thought the gun looked real. The first man said that he knew Mr. Maxwell had a car and ordered him to surrender his keys, phone, and wallet. Mr. Maxwell complied but asked for his FOID card, which the man returned. Mr. Maxwell walked to his Jeep with the three men, and the first man said to Mr. Maxwell: "you're coming, too." The third man said that he "didn't want any part of it," and walked away.

¶ 5      Defendant and the first man ordered Mr. Maxwell to enter the rear driver's side door and to put on a seatbelt. The first man sat in the driver's seat and defendant sat in the front passenger

seat. They engaged the child safety locks and told Mr. Maxwell that they would drive around and drop him off "somewhere," but would not hurt him. The men asked Mr. Maxwell how far they were from his house and for directions to drive south. Defendant told Mr. Maxwell not to lie because "they knew where [he] lived and where [his] family lived." Mr. Maxwell did not see the gun again, but defendant repeatedly threatened to shoot him.

¶ 6    After "circling around" for approximately three hours, the first man drove to a gas station and put gas in the Jeep. No other customers were present. Defendant stayed in the vehicle but ordered Mr. Maxwell to purchase a "Black and Mild" (a type of cigar). Mr. Maxwell walked to the window of the gas station to make the purchase, but did not ask the clerk for help because he had to shout his request and worried that the men would hear him. He did not try to run because he thought that the men would catch him. He returned to the Jeep and the men continued driving until they released him at 47th and State Streets. Mr. Maxwell went to a police station and reported what had happened. At approximately 9:30 a.m., he went to 75th and State Streets, where he saw his Jeep on the sidewalk, resting on its side against a wall. Later that day, Mr. Maxwell identified defendant in a physical lineup.

¶ 7    Officer Chan testified that he was on patrol at approximately 7:30 a.m. on May 17, 2011. He heard tires screeching and drove toward 75th Street and Indiana Avenue, where he saw a Jeep "flipped over on the sidewalk." Defendant exited the driver's side door, jumped from the car, and fled. Officer Chan detained defendant less than two blocks away and conducted a pat down. Afterwards, an evidence technician was called to process the Jeep.

¶ 8    The State published a video of the crash, which was entered into evidence. The defense did not move for a directed verdict, and defendant did not testify.

¶ 9    In finding defendant guilty of aggravated kidnaping, armed robbery, and aggravated vehicular hijacking while armed with a firearm, the trial court stated that Mr. Maxwell was "very credible," and noted that he had described the appearance of defendant's gun and testified that it looked real. The trial court also observed that Mr. Maxwell had a FOID card and "was aware of weapons."

¶ 10    At the hearing on defendant's motion to vacate the convictions, defense counsel contended that Mr. Maxwell was "mistaken" when he testified that defendant had been armed with a firearm. Counsel argued, *inter alia*, that Mr. Maxwell had spent the night in a bar, encountered defendant on a dark street, and had seen the alleged weapon for only a few seconds. According to counsel, the State had attempted to portray Mr. Maxwell as a firearms expert, but no testimony established that he could distinguish between real and fake firearms. In response, the State contended that Mr. Maxwell's FOID card and his testimony "demonstrated his familiarity with guns." The trial court denied defendant's motion, stating:

> "The Court finds that the victim was credible and he was in belief of being *** shot [by] a firearm and he did say on direct what type. It was a Glock. The victim was the person who possessed the [FOID] card and indicates some familiarity with the weapons. The Court finds it was long enough of an observation of the flash from this item that was in defendant's hands and what he described later on as a Glock.
>
> The Court finds that it is sufficient and beyond a reasonable doubt that *** this offense occurred with a firearm."

¶ 11    Following a sentencing hearing, the trial court imposed concurrent terms of 21 years' imprisonment for each offense on May 29, 2014. The 21-year sentence included a mandatory 15-year sentencing enhancement for defendant's use of a firearm.

¶ 12                               II. ANALYSIS

¶ 13                        A. Sufficiency of the Evidence

¶ 14    On appeal, defendant first contends that the State failed to prove beyond a reasonable doubt that he was armed with a firearm during the charged offenses. Defendant submits that the State neither produced the gun at trial nor presented evidence that the gun could have been fired. Consequently, the only evidence of a firearm was the victim's testimony, which defendant argues is insufficient to sustain his conviction. Defendant observes that Mr. Maxwell saw the gun for just a few seconds, when defendant "slightly" pulled it from his jacket during their encounter on a dark street. Mr. Maxwell did not describe the color or size of the gun, and only testified that the gun looked like a "Glock" on redirect examination. Thus, according to defendant, Mr. Maxwell may have seen a BB gun, air pistol, or other device that is excluded from the statutory definition of a firearm. Additionally, defendant argues that the trial court improperly inferred that Mr. Maxwell's FOID card bolstered his ability to identify a firearm. Under these circumstances, defendant submits that his repeated threats to shoot the victim were merely intended to "secure [his] cooperation," and do not establish that defendant was armed.

¶ 15    The standard of review on a challenge to the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48. A reviewing court will not substitute its judgment for that of the trier of fact on

questions involving the credibility of witnesses or the weight of the evidence. *Id*. To sustain a conviction, "[i]t is sufficient if all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt." *People v. Hall*, 194 Ill. 2d 305, 330 (2000). A defendant's conviction will be reversed only if the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Belknap*, 2014 IL 117094, ¶ 67.

¶ 16    In this case, defendant was convicted of aggravated kidnaping, armed robbery, and aggravated vehicular hijacking. 720 ILCS 5/10-2(a)(6), 18-2(a)(2), 18-4(a)(4) (West 2010). On appeal, defendant contests only whether the evidence establishes that he was armed with a firearm during each of the charged offenses. To determine what constitutes a "firearm" under the Criminal Code of 1961, we look to the meaning ascribed under the Firearm Owners Identification Card Act (FOID Card Act). 720 ILCS 5/2-7.5 (West 2010). In relevant part, the FOID Card Act defines a "firearm" as "any device *** which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas." 430 ILCS 65/1.1 (West 2010). This definition excludes pneumatic guns, spring guns, paint ball guns, certain BB guns, and signal guns. *Id.* However, the fact that a defendant possessed a firearm, as defined under the FOID Card Act, need not be established by "direct or physical evidence" because the "unequivocal testimony of a witness that the defendant held a gun is circumstantial evidence sufficient to establish that a defendant is armed [with a firearm] during a robbery." *People v. Fields*, 2014 IL App (1st) 110311, ¶ 36.

¶ 17    Here, the evidence viewed in the light most favorable to the State was sufficient to establish that defendant committed the charged offenses while armed with a firearm. Mr.

Maxwell testified that defendant "flashed a gun" for several seconds during their initial encounter, pulling it slightly out of his coat and placing it near his chest or stomach. Mr. Maxwell noticed the gun was "squared off," and stated that it resembled a "Glock." He had previously seen a real gun, and thought that defendant's gun looked real. Additionally, Mr. Maxwell testified that defendant had threatened to shoot him while displaying the gun, and repeated this threat throughout the encounter. Based on this testimony, the trial court found that Mr. Maxwell was "very credible," and was "aware of weapons," and that he had a sufficient opportunity to observe and identify the object in defendant's hands.

¶ 18    The court also noted that Mr. Maxwell possessed a FOID card, but contrary to defendant's assertion, nothing in the record suggests that the court improperly relied on this fact as the basis for accepting Mr. Maxwell's testimony. Rather, the court's comments indicate that it considered Mr. Maxwell's testimony and credibility as a whole in determining that defendant was armed with a firearm, and we will not disturb these findings on review. *People v. Lissade*, 403 Ill. App. 3d 609, 612 (2010) (trier of fact is "best positioned to judge the credibility of the witnesses" and its decision "is entitled to great deference").

¶ 19    Defendant further argues that the State failed to prove beyond a reasonable doubt that the gun did not fall within the statutory exception to the general definition of a firearm in the FOID Card Act. However, the trial court was not required to discount Mr. Maxwell's testimony that the gun looked real or to speculate whether the gun was something other than a firearm as defined by statute. *People v. Campbell*, 146 Ill. 2d 363, 380 (1992) (trier of fact need not search out explanations consistent with the defendant's innocence and raise them to reasonable doubt). Moreover, in view of the victim's credible testimony, the absence of physical evidence does not

render the trial court's findings unreasonable or unsatisfactory. *Fields*, 2014 IL App (1st) 110311, ¶ 36. Defendant relies upon *People v. Ross*, 229 Ill. 2d 255 (2008), and *People v. Crowder*, 323 Ill. App. 3d 710 (2001). However, no evidence at trial suggested that defendant's gun falls within the statutory exception to the statutory definition of a firearm (*Ross*, 229 Ill. 2d at 276-77 (police officer testified that defendant's gun was a "pellet gun")), nor is this a case where the State destroyed the gun, precluding the defendant from mounting a defense (*Crowder*, 323 Ill. App. 3d at 712-13).

¶ 20 Nonetheless, defendant has submitted photographs of air pistols and pellet guns taken from retail websites, and asks this court to take judicial notice that these objects are not statutorily defined firearms, yet nonetheless resemble the gun that the victim described at trial. This request is improper, as the photographs were not submitted to the trial court. If we were to consider these photographs for the first time on appeal, it "would amount to a trial *de novo* on an essential element of the charges." *People v. Williams*, 200 Ill. App. 3d 503, 513 (1990). Accordingly, we decline to consider these newly introduced photographs, and conclude that the evidence at trial was sufficient to establish that defendant was armed with a firearm during the charged offenses.

¶ 21 B. *Krankel*

¶ 22 Defendant next contends that the trial court erred in failing to conduct a preliminary inquiry into his claim, made during his statement in allocution at sentencing, that defense counsel rendered ineffective assistance by usurping defendant's right to testify. As we find defendant's statement in allocution did not raise a claim of ineffective assistance of counsel, we hold that the

trial court had no duty to conduct an inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 23    In *Krankel*, our supreme court established the action to be taken by the court when a defendant asserts a *pro se* posttrial claim of ineffective assistance of counsel. The court should first examine the factual basis underlying the defendant's claim. *People v. Taylor*, 237 Ill. 2d 68, 75 (2010). If the court determines the claim lacks merit or is addressed only to matters of trial strategy, new counsel need not be appointed, and the *pro se* motion may be denied. *Id.* If, however, the defendant's allegations reveal possible neglect of the case, new counsel should be appointed to argue the claim of ineffective assistance. *Id.*; see also *Krankel*, 102 Ill. 2d at 189.

¶ 24    In order for *Krankel* to be applicable, however, the defendant must have sufficiently alleged a claim of ineffective assistance. *Taylor*, 237 Ill. 2d at 75-77. The defendant must "raise specific claims with supporting facts before the trial court is required to consider the allegations." *People v. Walker*, 2011 IL App (1st) 072889-B, ¶ 34. Allegations that are "conclusory, misleading or legally immaterial, or do not identify a colorable claim of ineffective assistance of counsel" do not require further inquiry by the trial court. *Id.* The question of whether a defendant has sufficiently alleged ineffective assistance of counsel is one of law, and, therefore, subject to a *de novo* standard of review. *Taylor*, 237 Ill. 2d at 75.

¶ 25    Turning to the record in the present case, the following colloquy occurred after the State rested its case-in-chief:

> "DEFENSE COUNSEL: Your [H]onor, I've spoken with Mr. Hunter, I don't believe he's going to testify.

THE COURT: Mr. Hunter, this is your trial and you have a right to testify at your own trial. Is it your decision and your decision only, of course in consultation with your attorney, is it your decision not to testify at your own trial?

THE DEFENDANT: Yes, ma'am."

¶ 26    Later, during sentencing, defense counsel stated:

"As long as this case has been pending before [Y]our Honor, no adult has ever shown up for Kevin. The one time someone did show up, it was his twin sister. There was a problem in the courtroom with her. I can tell you that Kevin was sitting next to me at the time his sister created the scene in the courtroom and he was trying to tell her just to be quiet and leave and so I think that does operate as mitigation for him."

¶ 27    The court then offered defendant the opportunity to speak in allocution. The following colloquy occurred:

"THE COURT: Mr. Hunter, is there anything you wish to say before your sentence?

THE DEFENDANT: I say I change my—

ASSISTANT PUBLIC DEFENDER: Do you want to say anything to the Judge,

Kevin? This is your time to say it.

THE COURT: Do you have anything to say about the case that you have been sentenced on? Remember the trial when you sister was here?

THE DEFENDANT: Yeah.

- 10 -

THE COURT: I know you do. Do you have anything to say before I tell you what your sentence is? Anything at all?

THE DEFENDANT: I want to say whatever happened that day, that was between her. The witness on the stand. She told me not to get on the stand. I was telling the truth. I wanted to have a chance to tell my side of the story. I didn't have anything to do with it.

THE COURT All right.

THE DEFENDANT: She is the one that did it.

THE COURT: Beg your pardon.

THE DEFENDANT: Go ahead."

¶ 28 Defendant contends that his statement in allocution advised the trial court that counsel had rendered ineffective assistance by preventing him from testifying at trial, and that the court erred in failing to conduct a preliminary *Krankel* inquiry into this allegation. Defendant acknowledges that he waived his right to testify. However, defendant contends that his waiver was "irrelevant" to whether the court should have conducted a *Krankel* inquiry, because without having made an inquiry, the court could not know whether counsel had "unduly coerced [defendant] into the waiver."

¶ 29 The State responds that defendant did not assert a claim of ineffective assistance when he spoke in allocution, as his statement was incoherent and may have referred to an earlier incident in court involving his sister rather than a disagreement with defense counsel. Additionally, the State argues that the court had previously queried defendant regarding the waiver of his right to testify and had no "*sua sponte* duty to inquire into the reason for defendant's decision not to

testify at trial." The State also observes that defendant never informed the court, in either an oral motion or posttrial motion, that he wished to testify but was prevented by defense counsel. Consequently, the State argues that the court had no reason to know from defendant's statement in allocution that he was alleging that counsel had prevented him from testifying.

¶ 30    In reply, defendant argues that "the record as a whole" suggests that his statement in allocution contained a complaint about defense counsel, rather than his sister. Defendant submits that the record shows multiple instances where he "attempted to raise concerns" regarding his case and his attorney before the court, but was not allowed to speak. According to defendant, these instances explain why he was not more persistent in raising complaints about counsel at sentencing.

¶ 31    After considering defendant's statement in allocution in context, we find that defendant did not raise a claim for ineffective assistance of counsel and, therefore, the trial court did not err in not conducting a *Krankel* inquiry. Both the trial court and defense counsel encouraged defendant to "say anything" he wished. Defendant's statement was rambling and "amenable to more than one interpretation." *Taylor*, 237 Ill. 2d at 77. Moreover, we cannot say that defendant's remarks at previous appearances in his case placed the trial court on notice that defendant was raising a claim of ineffective assistance at his sentencing hearing, as his statement in allocution neither mentioned his attorney nor made a specific claim of ineffective assistance. *People v. Porter*, 2014 IL App (1st) 123396, ¶ 12 (awareness by the trial court that defendant has complained of counsel's representation "imposes no duty by the trial court to *sua sponte* investigate defendant's complaint"); see also *People v. Gillespie*, 276 Ill App. 3d 495, 502 (1995) ("Nothing in *Krankel* suggests that if the issue [of ineffective assistance] is not raised

before the trial court a duty should be placed on the trial court to raise the issue of ineffectiveness of counsel *sua sponte*.").

¶ 32    Assuming, *arguendo*, that defendant's remarks referred to defense counsel, it is apparent that he never contended that counsel prevented him from testifying at trial. Rather, defendant stated that "she told me not to get on the stand" and that he "wanted to have a chance to tell [his] side of the story." See *People v. Hernandez*, 2014 IL App (2d) 131082, ¶ 33 (finding no ineffective assistance where "defendant's allegations reflect that counsel did not *prohibit* defendant from testifying but, rather, counsel gave strategic advice, defendant listened to that advice, and defendant chose not to testify" (emphasis in original)). In this case, where the record reveals "no clear basis for an allegation of ineffectiveness of counsel," the trial court "had no duty to conduct a preliminary investigation of the factual matters underlying defendant's claim." *People v. Garland*, 254 Ill. App. 3d 827, 834 (1993). Consequently, defendant's claim that the trial court erred in not conducting a *Krankel* inquiry is without merit.

¶ 33                                C. Resentencing

¶ 34    After defendant filed his brief on appeal, he filed a supplemental brief arguing that certain statutory amendments that took effect while his appeal was pending should be applied retroactively to his case.[1] Specifically, defendant contends that his case must be remanded for resentencing under new sentencing provisions contained in Public Act 99-69, section 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105) and Public Act 99-258, section 5 (eff. Jan. 1, 2016)

---

[1]The State filed a supplemental response brief in accordance with an order of this court. Defendant subsequently requested leave to file a supplemental reply brief, which we also permitted.

(amending 705 ILCS 405/5-130, 5-805 (West 2014)).[2] Both the enactment of section 5-4.5-105 of the Unified Code of Corrections (Code) and the amendments to sections 5-130 and 5-805 of the Act took effect on January 1, 2016, while defendant's case was pending on direct appeal.[3] Consequently, we must decide whether these provisions apply retroactively to defendant's case.

¶ 35    "Whether an amendment to a statute will be applied prospectively or retroactively is a matter of statutory construction." *Thomas v. Weatherguard Construction Co.*, 2015 IL App (1st) 142785, ¶ 63. Therefore, we review this issue *de novo*. *Id.*

¶ 36    In considering whether an amendment applies prospectively or retroactively, we follow the approach set forth by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). See *People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 29. Under the first step of the *Landgraf* analysis, "if the legislature has clearly indicated the temporal reach of the amended statute, that expression of legislative intent must be given effect, absent a constitutional prohibition." *Id.* We apply the plain and ordinary meaning of the statutory language whenever possible, and construe statutes to give a reasonable meaning to all words and sentences so that no part is rendered superfluous. *People v. Glisson*, 202 Ill. 2d 499, 504-05 (2002). If the statute is clear and unambiguous, courts cannot read into the statute limitations,

---

[2]These provisions will be referred to, respectively, as section 5-4.5-105 of the Unified Code of Corrections and sections 5-130 and 5-805 of the Juvenile Court Act of 1987.

[3]The text of section 5-4.5-105 appears in Public Act 99-69, section 10, passed on May 19, 2015, and signed into law on July 20, 2015, and also in Public Act 99-258, section 15, passed on May 31, 2015, and signed into law on August 4, 2015. The amendments to sections 5-130 and 5-805 of the Act appear in Public Act 99-258, section 5. Neither public act specifies an effective date for the provisions at issue in this appeal. Under section 1 of the Effective Date of Laws Act (5 ILCS 75/1(a) (West 2014)), however, bills passed prior to June 1 of a calendar year "shall become effective on January 1 of the following year, or upon its becoming a law, whichever is later." Thus, the effective date for section 5-4.5-105 of the Code and the amendments to sections 5-130 and 5-805 of the Act is January 1, 2016.

exceptions, or other conditions not expressed by the legislature or resort to other aids of statutory construction. *Id.* at 505.

¶ 37    Under the second step of the *Landgraf* analysis, if the amendment contains no express provision regarding its temporal reach, "the court must go on to determine whether applying the statute would have a retroactive impact." *J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 29. If applying the statute retroactively "will impair rights a party possessed when acting, increases a party's liability for past conduct, or impose new duties with respect to transactions already completed" "a court will presume that the statute does not govern absent clear legislative intent favoring such a result." *(quoting Allegis Realty Investors v. Novak,* 223 Ill. 2d 318, 331 (2006).

¶ 38    However, Illinois courts rarely look beyond the first step of the *Landgraf* analysis. *Caveney v. Bower*, 207 Ill. 2d 82, 94 (2003). This is because amendments which do not themselves contain a clear indication of legislative intent regarding temporal reach are "presumed to have been framed" in view of section 4 of the Statute on Statutes. *J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 31 (citing 5 ILCS 70/4 (West 2000)). Section 4, "often referred to as the general saving clause of Illinois" (*Novak*, 223 Ill. 2d at 331), provides:

> "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as

practicable, to the laws in force at the time of such proceeding. If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act." 5 ILCS 70/4 (West 2010).

Construing this statutory language, our supreme court held in *Caveney*, 207 Ill. 2d at 92, that where the legislation itself does not specifically include an expression of legislative intent as to temporal reach, section 4 "represents a clear legislative directive as to the temporal reach of statutory amendments and repeals: those that are procedural in nature *may* be applied retroactively, while those that are substantive *may not*." (Emphases added.)

¶ 39    With these principles in mind, we turn to the amended provisions of the Code and the Act that defendant contends should apply retroactively in his case.

¶ 40                              1. Section 5-4.5-105 of the Code

¶ 41    First, we consider whether section 5-4.5-105 of the Code applies retroactively to defendant's case, which was pending on direct appeal when the provision took effect. In relevant part, section 5-4.5-105 provides:

"(a) *On or after the effective date of this amendatory Act* of the 99th General Assembly, when a person commits an offense and the person is under 18 years of age at the time of the commission of the offense, the court, at the sentencing hearing conducted under Section 5-4-1, shall consider the following

additional factors in mitigation in determining the appropriate sentence[.]" (Emphasis added.) Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105).

¶ 42    Section 5-4.5-105 then sets forth several factors that the court must consider in mitigation, including, *inter alia*, the offender's "age, impetuosity, and level of maturity at the time of the offense," his or her "family, home environment, educational and social background, including any history of parental neglect," and his or her "potential for rehabilitation." *Id.* Additionally, sections 5-4.5-105(b) and 5-4.5-105(c) provide that, except in cases where the offender has been convicted of certain homicide offenses, the trial court "may, in its discretion, decline to impose any otherwise applicable sentencing enhancement based upon firearm possession." *Id.* Prior to the enactment of section 5-4.5-105, a 15-year firearm enhancement was mandatory for all offenders convicted of committing aggravated kidnaping, armed robbery, and aggravated vehicular hijacking while armed with a firearm. 720 ILCS 5/10-2(a)(6), 18-2(a)(2), 18-4(a)(4) (West 2010).

¶ 43    Our analysis of whether section 5-4.5-105 applies retroactively or prospectively begins with the first step of the *Landgraf* analysis, which directs us to consider whether the statute clearly expresses the legislature's intent regarding temporal effect. *J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 29. We find that, read plainly, section 5-4.5-105 does state its proper temporal reach by clearly indicating that a court is required to apply its provisions only at sentencing hearings held "[o]n or after the effective date" of Public Act 99-69, *i.e.*, January 1, 2016. Nothing in the statute suggests that section 5-4.5-105 applies retroactively to cases where, as here, sentencing

occurred prior to January 1, 2016, and we may not subvert the plain language by reading into the statute conditions not expressed by the legislature. *Glisson*, 202 Ill. 2d at 505.

¶ 44    Indeed, courts recognize that the use of language providing that a statutory addition or amendment applies only to specific acts or occurrences taking place "on or after" a particular date clearly expresses the legislature's intent regarding temporal effect. See *Sadler v. Service*, 406 Ill. App. 3d 1063, 1066 (2011) (a new statute of limitations, while a procedural rule, was not to be applied retroactively where the statute explicitly stated it only applied to promissory notes "dated on or after the effective date" (internal quotation marks omitted) of the amendatory Act; the appellate court found that this language expressed "a clear temporal reach"); *Forest Preserve District of Du Page County v. First National Bank of Franklin Park*, 401 Ill. App. 3d 966, 1002-03 (2010) (where amendments to the Eminent Domain Act included language that they were applicable only to complaints to condemn filed on or after its effective date, "[t]he words of the statute prevent us from applying the amendments" to a complaint filed prior to that date); *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 407 (2009) (statutory language providing that amendment thereto applied to actions commenced on or after the effective date of that amendment presented a situation "in which the legislature has clearly indicated when the relevant statute applies"); *People v. Wasson*, 175 Ill. App. 3d 851, 854 (1988) (where statutory amendment stated it shall only apply on or after the effective date of the amendatory act, the legislature "expressly provided" that the law was "not intended to be applied retroactively").

¶ 45    Nevertheless, defendant argues that neither the plain language of the statute nor its title: "Sentencing of Individuals Under the Age of 18 at the Time of the Commission of an Offense," prevent the statute from applying to offenses that occurred before the effective date.

Additionally, defendant notes that section 5-4.5-105 lacks a savings clause, even though a savings clause appears in a different provision contained in the same bill, and he submits that the legislature would have included a similar clause in section 5-4.5-105 if the statute were to apply only prospectively.[4]

¶ 46    However, to the extent that defendant contends that the language of section 5-4.5-105 does not provide for prospective application, we reject it for the reasons discussed above. To the extent that defendant would have us look to the content of other statutory provisions to determine the legislature's intent with respect to the temporal reach of section 5-4.5-105, we reject that invitation in light of our supreme court's clear indication that when applying the first step of the *Landgraf* analysis, "it is not proper to look to the entire statute for legislative intent." *J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 34. Instead, the court must determine "whether the text of the amended provision, itself, clearly expresses the legislature's intent that the amendment be given either prospective or retrospective application." *Id.*

¶ 47    Defendant and the State raise other arguments with respect to the retroactivity of section 5-4.5-105, including the possible applicability of section 4 of the Statute on Statutes. In light of our resolution of this issue on the plain language of the statute and at the first step of the *Landgraf* analysis, we find these additional arguments irrelevant. *Doe A.*, 234 Ill. 2d at 406 ("Because section 4 of the Statute on Statutes operates as a default standard, it is inapplicable to situations where the legislature has clearly indicated the temporal reach of a statutory

---

[4]Defendant references Public Act 99-258, section 5 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130, 5-805 (West 2014)), which in part amends section 5-805 of the Act to require the State to petition for offenders under age 18 at the time of an offense to be sentenced in criminal court. In relevant part, Public Act 99-258, section 5 also provides that "[t]he changes made to [section 5-805] by this amendatory Act of the 99th General Assembly apply to a minor who has been taken into custody on or after the effective date of this amendatory Act of the 99th General Assembly." Pub. Act 99-258, § 5 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130, 5-805 (West 2014)).

amendment."); *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 24 (where the legislature clearly expresses its intent, "there is no need to turn to the alternative statutory sources suggested by plaintiffs in order to define the temporal reach of the Act").

¶ 48   We do note that defendant argues that section 5-4.5-105 should apply retroactively because it represents a "public policy shift" with respect to juvenile sentencing. Defendant likens his case to *People v. Bailey*, 1 Ill. App. 3d 161, 164 (1971). In *Bailey*, the defendant was sentenced to not less than 2 and not more than 10 years' imprisonment for marijuana-related offenses. *Id.* at 162. While the case was pending on appeal, a new law reduced the penalty for the same offenses to not more than 1 and not more than 5 years' imprisonment. *Id.* at 164-65. This court modified the defendant's sentence under the new scheme, recognizing that a "significant, substantial and mitigating basic public policy change [had] intervened." *Id.* at 164. However, we also noted that the new law expressly stated that the revised sentencing scheme would apply for any violation occurring prior to the law's effective date, if the case had not reached sentencing *or a final adjudication*. *Id.* at 164-65. The present case is distinguishable, as section 5-4.5-105 contains no comparable language that permits the statute to apply retroactively to still pending cases in which sentence was imposed prior to the statute's effective date. Consequently, defendant's argument does not change our conclusion that section 5-4.5-105 applies only prospectively.

¶ 49   Defendant further contends that if we conclude that section 5-4.5-105 may only be applied prospectively, the mandatory firearm enhancement is unconstitutional as applied to him, and his case must be remanded for resentencing so that the trial court may consider his youth and

rehabilitative potential in accordance with the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution. *See* U.S. Const., amend. VIII; Ill. Const. 1970, art. I, § 11.

¶ 50    As an initial matter, the State alleges that defendant forfeited his as-applied constitutional challenge by not raising the issue at an evidentiary hearing before the trial court. Consequently, the State argues that defendant may only raise a facial challenge to section 5-4.5-105 and, in this case, defendant has not made such an argument on appeal. Defendant maintains that the record contains the facts essential to his claim, *i.e.*, that he was 16 years old when he committed the offenses, but the trial court could not exercise discretion in imposing the firearm enhancement. For the following reasons, even if the record was sufficient to preserve defendant's as-applied constitutional challenge, we cannot say that his rights were violated.

¶ 51    The constitutionality of a statute is a question of law that we review *de novo*. *People v. Williams*, 2015 IL 117470, ¶ 8. An as-applied challenge to a statute's constitutionality requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party. *People v. Thompson*, 2015 IL 118151, ¶ 36. In contrast, a facial challenge to a statute's constitutionality requires a showing that the statute is unconstitutional under any set of facts, such that the specific facts related to the challenging party are irrelevant. *Id.* All statutes carry a "strong presumption of constitutionality," and the party challenging the statute has the burden of clearly establishing its invalidity. *People v. Mosley*, 2015 IL 115872, ¶ 22. We apply these principles in reviewing each of the constitutional violations alleged by defendant.

¶ 52    First, we consider defendant's claims under the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution. Although

defendant brings his as-applied constitutional challenge under both provisions, he contends that the proportionate penalties clause offers greater protection than the eighth amendment. See, *e.g.*, *People v. Pace*, 2015 IL App (1st) 110415, ¶ 139 ("when a punishment has been imposed, the proportionate penalties clause provides greater protection"). In this analysis, we independently analyze whether defendant's sentence violates either provision.

¶ 53    The eighth amendment, applicable to the states through the fourteenth amendment (*Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008)), provides that " '[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted' " (quoting U.S. Const., amend. VIII). The United States Supreme Court has interpreted the cruel and unusual punishment clause to prohibit "inherently barbaric punishments" as well as punishments which are "disproportionate to the crime." *Graham v. Florida*, 560 U.S. 48, 59 (2010).

¶ 54    Defendant submits that the mandatory firearm enhancement precludes the trial court from considering mitigating factors in sentencing juvenile offenders, and, therefore, may be unconstitutional under the eighth amendment. We rejected a similar argument in *Pace*, 2015 IL App (1st) 110415, ¶ 3, where the defendant pled guilty to one count of first degree murder, one count of first degree murder in which he personally discharged a firearm that proximately caused death, and two counts of aggravated battery with a firearm. *Id.* The court sentenced the defendant to an aggregate sentence of 100 years' imprisonment, which included a mandatory 25-year firearm enhancement. *Id.* ¶ 30. The defendant was 16 years old at the time of the offense. *Id.* ¶ 3. On appeal, the defendant contended, *inter alia*, that the mandatory firearm enhancement violated the eighth amendment of the United States Constitution because the "the 57-year minimum sentence the court was required to impose was a *de facto* life sentence." *Id.* ¶ 131. According to

defendant, this sentencing scheme violated the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012), which held that the eighth amendment prohibited the imposition of statutorily mandated sentences of life imprisonment without parole for juveniles convicted of homicide. *Pace*, 2015 IL App (1st) 110415, ¶ 130. We found that the mandatory firearm enhancement did not violate the eighth amendment, as the trial judge in *Pace* retained discretion to consider the defendant's youth in imposing a sentence between 57 years and life imprisonment. *Id*. ¶ 134.

¶ 55    In the present case, defendant was convicted of three Class X felonies: aggravated kidnaping, armed robbery, and aggravated vehicular hijacking. 720 ILCS 5/10-2(a)(6), 18-2(a)(2), 18-4(a)(4) (West 2010). The sentencing range for each offense, including a mandatory 15-year firearm enhancement, was 21 to 45 years. 730 ILCS 5/5-4.5-25 (West 2010). Although this sentencing range is substantial, defendant was not subject to a sentence comparable to the penalty that was rejected in *Miller*.

¶ 56    Moreover, the trial court received a detailed presentence investigation (PSI) report containing information regarding defendant's age, childhood history of abuse and neglect, drug and alcohol use, mental health treatment, and prior juvenile criminal history. The State relied upon defendant's prior criminal history in aggravation in support of its request for a sentence above the minimum, while defense counsel stressed defendant's history of neglect in arguing for a minimum sentence. Thus, the trial court was presented with and considered the mitigating factors, including defendant's youth, before imposing the minimum 21-year sentence for each offense. Here, as in *Pace*, the mandatory firearm enhancement did not preclude the trial court

from considering defendant's age in mitigation. Therefore, we cannot say defendant's sentence violated the eighth amendment.[5]

¶ 57    Next, we consider defendant's as-applied constitutional challenge under the proportionate penalties clause of the Illinois Constitution. In relevant part, this clause provides that penalties must be determined "both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A challenge under the proportionate penalties clause "contends that the penalty in question was not determined according to the seriousness of the offense." *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005).

¶ 58    In *Sharpe*, our supreme court recognized that the imposition of a mandatory firearm enhancement does not necessarily violate the proportionate penalties clause. The court stated:

> " 'Our court has previously rejected claims that the legislature violates article 1, section 11, when it enacts statutes imposing mandatory minimum sentences. Our decisions have recognized that the legislature's power necessarily includes the authority to establish mandatory minimum sentences, even though such sentences, by definition, restrict the inquiry and function of the judiciary in imposing sentence.' " *Id.* at 525 (quoting *People v. Dunigan*, 165 Ill. 2d 235, 245 (1995)).

---

[5] Defendant contends that this conclusion is in conflict with the recent decision in *People v. Nieto*, 2016 IL App (1st) 121604, ¶¶ 47-50, in which another panel of this court concluded that "*Miller* requires that a juvenile be given an opportunity to demonstrate that he belongs to the large population of juveniles not subject to natural life in prison without parole, even where his life sentence resulted from the trial court's exercise of discretion" (citing *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). We reject defendant's reliance on this case, as the defendant in that case, who was 17 at the time of the offense, was sentenced to a term of 78 years' imprisonment. *Nieto*, 2016 IL App (1st) 121604, ¶ 13. It was only after concluding that amounted to a "sentence of natural life without parole" that we concluded such a sentence was unconstitutional. *Id.*, ¶ 42. Again, while the sentence defendant faced and received here was substantial, it does not amount to a sentence of natural life without the possibility of parole.

¶ 59    In applying these principles to the present case, our decision in *People v. Banks*, 2015 IL App (1st) 130985, is instructive. In *Banks*, the defendant was convicted of first degree murder and sentenced to 45 years' imprisonment, including a 25-year mandatory firearm enhancement. *Id.* ¶ 18. The defendant was 16 years old at the time of the offense. *Id.* On appeal, the defendant contended, *inter alia*, that the firearm enhancement violated the proportionate penalties clause of the Illinois Constitution by precluding the trial court from making an "individualized determination" in view of his age and culpability. (Internal quotation marks omitted.) *Id.* ¶ 17. We found that the mandatory firearm enhancement did not violate the proportionate penalties clause, as the trial court retained discretion to impose a sentence within the statutory range and could consider the mitigating factors, including defendant's age. *Id.* ¶¶ 23-24. In the present case, as in *Banks*, the mandatory firearm enhancement did not preclude the trial court from considering defendant's age as mitigation in its determination of defendant's sentence. Therefore, we find no violation of the proportionate penalties clause.

¶ 60    Defendant argues, however, that *Pace* and *Banks* lack precedential value because they were decided before section 5-4.5-105 of the Code had taken effect. Defendant also argues that the equal protection clauses of the United States and Illinois Constitutions also require remand for resentencing, as section 5-4.5-105 now permits the court to consider youth and rehabilitative potential in deciding whether to impose the firearm enhancement on similarly situated offenders sentenced after the effective date of January 1, 2016. See U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2.

¶ 61    As we have established, however, the provisions of section 5-4.5-105 apply only prospectively and do not control defendant's case. *Pace* and *Banks* are thus applicable to the

sentencing scheme at issue here. Moreover, "[p]rospective application of a new doctrine or rule of law does not violate the equal protection of laws under either the Federal or Illinois constitution." *Coney v. J.L.G. Industries, Inc.*, 97 Ill. 2d 104, 125 (1983); see also *People v. Richardson*, 2015 IL 118255, ¶ 10 ("neither the fourteenth amendment nor the Illinois Constitution prevents statutes and statutory changes from having a beginning, nor does either prohibit reasonable distinctions between rights as of an earlier time and rights as they may be determined at a later time").

¶ 62    In view of all the foregoing, we reject defendant's retroactivity and constitutionality arguments with respect to section 5-4.5-105.

¶ 63                              2. Section 5-130 of the Act

¶ 64    We next consider whether the amendment to section 5-130 of the Act applies retroactively to defendant's case, which was pending on direct appeal when the amendment took effect.

¶ 65    Under the version of section 5-130(1)(a) in effect when defendant committed the present offenses, minors age 15 or older who, like defendant, were charged with armed robbery, aggravated kidnaping, and aggravated vehicular hijacking, were expressly excluded from the jurisdiction of the juvenile court. 705 ILCS 405/5-130(1)(a) (West 2012).[6] The amended, current version of section 5-130(1)(a) states, in relevant part:

>       "(1)(a) The definition of delinquent minor under Section 5-120 of this Article
>
>       shall not apply to any minor who at the time of an offense was at least 16 years of age

---

[6]While aggravated kidnaping was not included in this version of section 5-130, the charges of armed robbery and aggravated vehicular hijacking were included, with the statutory provision further providing that charges for those offenses "and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State." 705 ILCS 405/5-130(1)(a) (West 2012).

and who is charged with: (i) first degree murder, (ii) aggravated criminal sexual assault, or (iii) aggravated battery with a firearm as described in Section 12-4.2 or subdivision (e)(1), (e)(2), (e)(3), or (e)(4) of Section 12-3.05 where the minor personally discharged a firearm as defined in Section 2-15.5 of the Criminal Code of 1961 or the Criminal Code of 2012.

These charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State." Pub. Act 99-258, § 5 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130 (West 2014)).

¶ 66    In substance, the amended version of section 5-130(1)(a) extends the jurisdiction of the juvenile court to all minors charged with armed robbery, aggravated kidnaping, and aggravated vehicular hijacking. These offenders are thereby removed from the jurisdiction of the criminal court, unless the State petitions to transfer the case from the juvenile court to the criminal court pursuant to section 5-805 of the Act. See Pub. Act 99-258, § 5 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-805 (West 2014)).

¶ 67    Defendant contends that the amendment to section 5-130(1)(a) applies retroactively to his case and that he must be resentenced in juvenile court, as the charged offenses now fall under the juvenile court's jurisdiction and the State never filed a petition to transfer his case. Defendant observes that the amendment to the Act is procedural. See *People v. Patterson*, 2014 IL 115102, ¶ 105 (recognizing that "the transfer statute is purely procedural"). Defendant also notes that section 5-130(1)(a) lacks a savings clause or other language that would limit its retroactive effect, whereas a savings clause does appear in both another amendment contained in the same

public act that amended section 5-805 and in a prior amendment to section 5-130(1)(a) itself.[7] According to defendant, the amendment to section 5-130(1)(a) would have included a similar savings clause had the legislature intended the provision only to apply prospectively, and as such the legislature clearly intended retrospective application of the amendment. Defendant finally contends that, even if no evidence of legislative intent is present, at the very least section 5-130(1)(a) must be "presumed to have been framed" in view of section 4 of the Statute on Statutes (*J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 31), which "represents a clear legislative directive as to the temporal reach of statutory amendments and repeals: those that are procedural in nature may be applied retroactively" (*Caveney*, 207 Ill. 2d at 92).

¶ 68    The State contends that the amended version of 5-130(1)(a) does not apply retroactively to defendant's case. According to the State, the amendment includes a delayed effective date that mandates its prospective application, as Public Act 99-258, section 5, which amended section 5-130(1)(a), was passed on May 31, 2015, but did not take effect until January 1, 2016. Therefore, the State submits that its failure to petition for defendant to be sentenced in criminal court is irrelevant because no petition was required under the version of section 5-130(1)(a) in effect at the time of defendant's trial and sentencing and the amendment does not apply retroactively. Additionally, the State argues that defendant's request for a new sentencing hearing, but not a transfer hearing under the amended, current language section 5-805, constitutes tacit acknowledgment that the legislature did not intend new transfer hearings for minors whose cases were already in the judicial system on January 1, 2016.

---

[7]In relevant part, Public Act 99-258, section 5 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-805 (West 2014)), provides that the changes made to section 5-805 "apply to a minor who has been taken into custody on or after the effective date of this amendatory Act." The savings clause from the prior amendment to section 5-130 states that the changes made to this section by Public Act 98-61 apply to a minor who has been arrested or taken into custody on or after January 1, 2014 (the effective date of Public Act 98-61). Pub. Act 98-61 (eff. Jan. 1, 2014).

¶ 69 We need not address all of these arguments to resolve this issue. Rather, to determine whether the amendment to section 5-130(1)(a) of the Act applies retroactively to defendant's case, we proceed under the same principles set forth in our analysis of section 5-4.5-105 of the Code.

¶ 70 Thus, following *Landgraf*, we must first consider whether the legislature "has clearly indicated the temporal reach of the amended statute," and give effect to that expression of legislative intent. *J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 29. In this case, the amendment to section 5-130(1)(a) contains no language indicating whether the legislature intended the amendment to apply retroactively or prospectively from the effective date of January 1, 2016. While defendant asks us to consider portions of other statutory provisions to determine the legislature's temporal intent, we again decline to do so in light of our supreme court's clear statement that we *must* determine "whether the text of the amended provision, itself, clearly expresses the legislature's intent that the amendment be given either prospective or retrospective application." *J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 34.

¶ 71 However, even if we accepted defendant's argument that the amendment to section 5-130(1)(a) of the Act represents merely a procedural change that *may* be applied retroactively pursuant to section 4 of the Statute on Statutes, we would decline to do so here. Section 4, itself, indicates that proceedings following an amendment "shall conform, *so far as practicable*, to the laws in force at the time of such proceeding." (Emphasis added.) 5 ILCS 70/4 (West 2010). This court has previously held that this language did not require retroactive application of a prior amendment to a prior version of the transfer provision in the Act, where the amendment "became

effective prior to [defendant's] trial, although after [defendant's] transfer and indictment." *People v. Miller*, 31 Ill. App. 3d 436, 441 (1975). We come to a similar conclusion here.

¶ 72    Furthermore, "[e]ven if a statutory amendment is procedural, it may *not* be applied retroactively if the statute would have a retroactive impact." (Emphasis added.) *Schweickert v. AG Services of America, Inc.*, 355 Ill. App. 3d 439, 444 (2005). Thus, if applying the statute retroactively will have a retroactive impact in that it "will impair rights a party possessed when acting, increases a party's liability for past conduct, or impose new duties with respect to transactions already completed" "a court will presume that the statute does not govern absent clear legislative intent favoring such a result." *Allegis Realty Investors*, 223 Ill. 2d at 331 (citing *Landgraf*, 511 U.S. at 280); see also *Schweickert*, 355 Ill. App. 3d at 444 (recognizing that an amendment has an impermissible retroactive impact where it "attaches new legal consequences to events completed before the statute was changed").

¶ 73    Applying the amendment to section 5-130(1)(a) would clearly have a retroactive impact on this matter, as it would impose new duties with respect to transactions already completed and attach new legal consequences to events completed before the statute was changed. The offenses for which defendant was charged and convicted were subject to automatic transfer to criminal court and defendant was automatically subject to criminal sentencing prior to the changes made by Public Act 99-258. See 705 ILCS 405/5-130, 5-805 (West 2014). In the trial court, the State needed to take no action to accomplish these results in this case, a matter where defendant has already been tried, convicted, and sentenced in criminal court. Applying the amended language retroactively to this case would either require the State to file new petitions seeking criminal prosecution and sentencing on remand, or would result in significant legal consequences for its

failure to have done so previously. Even though defendant's appeal was pending when Public Act 99-258 was enacted, we decline to apply it retroactively to this matter in light of these retroactive impacts. See *People v. Yarbor*, 383 Ill. App. 3d 676, 684 (2008) (where, in a direct appeal, this court refused retroactive application of an amendment to Rule 431(b), which imposed duties on a trial court with respect to *voir dire*, because it would " 'impose new duties' on an already completed criminal prosecution" and subject "all pending direct appeals from a jury trial would be subject to reversal and a new trial").

¶ 74    In reaching this conclusion, we necessarily reject defendant's arguments that: (1) by applying the retroactive impact test, we are improperly invoking the second step of the *Landgraf* analysis in violation of our supreme court's precedent, and (2) we should follow the holding reached in *People v. Patterson*, 2016 IL App (1st) 101573-B, ¶ 23, in which another panel of this court concluded that the amendment to section 5–130 applies retroactively.

¶ 75    First, while our supreme court has noted that courts will "rarely" look beyond the first step of the *Landgraf* analysis in light of section 4 of the Statute on Statutes (*Caveney*, 207 Ill. 2d at 94), it has not indicated that the second step—considering any possible retroactive impact—is wholly irrelevant. Indeed, recent opinions from our supreme court clearly indicate that an analysis of potential retroactive impact remains an important consideration. See *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 23; *J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 29-30

¶ 76    Second, we respectfully disagree with the analysis in *Patterson*, 2016 IL App (1st) 101573-B. In finding that the amendments to section 5–130 apply retroactively, the *Patterson* court appears to have concluded that, under the section 4 of Statute on Statutes, procedural

amendments apply retroactively to *all cases* pending on direct appeal." *Id*., ¶ 17. However, as discussed above, that section merely indicates that proceedings following an amendment "shall conform, *so far as practicable*, to the laws in force at the time of such proceeding." (Emphasis added.) 5 ILCS 70/4 (West 2010). Section 4 thus "represents a clear legislative directive as to the temporal reach of statutory amendments and repeals: those that are procedural in nature *may be* applied retroactively, while those that are substantive *may not*." (Emphases added.) *Caveney*, 207 Ill. 2d at 92. It does not *require* retroactive application of procedural amendments.

¶ 77    Moreover, in light of its apparent conclusion that retroactive application of the amendments to section 5–130 was mandatory, the *Patterson* court undertook no retroactive impact analysis. As demonstrated above, our own analysis of the amendments to section 5-130 demonstrates clear, impermissible retroactive impacts and preclude us from applying them in this case

¶ 78                          D. Presentence Credit

¶ 79    Finally, defendant contends, and the State correctly concedes, that his mittimus must be corrected to reflect one additional day of credit for presentence incarceration. A defendant is entitled to credit for any part of a day he spent in custody up to, but not including, the day of sentencing. 730 ILCS 5/5-4.5-100(b) (West 2010); *People v. Williams*, 239 Ill. 2d 503, 505, 510 (2011). Here, the record establishes that defendant was arrested on May 17, 2011, and remained in custody until his sentencing on May 29, 2014, a total of 1108 days, excluding the day of sentencing. The trial court, however, granted defendant presentence incarceration credit for 1107 days. Remand is unnecessary, as this court may correct the mittimus at any time. *People v.*

*Anderson*, 2012 IL App (1st) 103288, ¶ 35. Accordingly, we direct the clerk of the circuit court to amend the mittimus to reflect 1108 days of presentence credit.

¶ 80    For the foregoing reasons, we affirm the judgment of the trial court and order the mittimus corrected.

¶ 81    Affirmed; mittimus corrected.