# Illinois Official Reports

## Supreme Court

---

## *People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE *ex rel.* LISA MADIGAN, Appellee, v. J.T. EINODER, INC., *et al.*, Appellants. |
| Docket No. | 117193 |
| Filed | March 19, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Richard J. Billik, Jr., Judge, presiding. |
| Judgment | Appellate court judgment affirmed in part and reversed in part. |
| Counsel on Appeal | Richard J. Prendergast, Seamus C. Prendergast, Lionel W. Weaver and Brian C. Prendergast, of Richard J. Prendergast, Ltd., of Chicago, for appellants. |
| | Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Christopher M.R. Turner, Assistant Attorney General, of Chicago, of counsel), for the People. |
| Justices | JUSTICE BURKE delivered the judgment of the court, with opinion. |
| | Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1       On July 19, 2000, the Attorney General for the State of Illinois[1] on his own motion and at the request of the Illinois Environmental Protection Agency (IEPA), filed a complaint in the circuit court of Cook County against J.T. Einoder, Inc. (JTE), and Tri-State Industries, Inc. (Tri-State), alleging that JTE and Tri-State were operating a solid waste disposal site without a permit, in violation of the Environmental Protection Act (Act). 415 ILCS 5/1 *et seq.* (West 2000). Subsequently, in an amended complaint filed on January 31, 2005, John Einoder, the sole owner and operator of Tri-State, and Janice Einoder, the principal owner and president of JTE, were added to the suit as party defendants in their individual capacities.

¶ 2       After several years of litigation, the circuit court ruled in the State's favor, holding that defendants had violated the Act by engaging in open dumping and by permitting the deposit of construction and demolition debris (CDD) waste above grade without a permit. Monetary penalties were imposed on each defendant. In addition, the court granted the State's request for mandatory injunctive relief, ordering defendants to remove any and all material deposited above grade at the site.

¶ 3       Defendants appealed and the appellate court affirmed the circuit court's judgment, with one justice concurring in part and dissenting in part. 2013 IL App (1st) 113498.

¶ 4       We granted defendants' petition for leave to appeal. For reasons explained below, we affirm in part and reverse in part the judgment of the appellate court.

¶ 5                          BACKGROUND

¶ 6       The essential facts of this case are not in dispute. In 1993, a 40-acre parcel of land located near the intersection of Rt. 30 and Rt. 83, in unincorporated Lynwood, Illinois (the Lynwood site), was purchased by John Einoder and placed in a land trust for the benefit of Tri-State. The property, which contained a large sand pit, was developed into a construction and demolition resource recovery facility and landfill using leased equipment and operators provided by JTE, a closely held corporation owned by Janice Einoder (90%) and John Einoder (10%).

¶ 7       Sometime in 1995 the site began accepting general construction and demolition debris (GCDD),[2] and clean construction and demolition debris (CCDD).[3] Soon thereafter, the IEPA received a complaint that open dumping was taking place at the site. As a result, Gino Bruni, an

---

[1]The complaint was filed by then-Attorney General James E. Ryan. Illinois's current Attorney General Lisa Madigan now represents the People of the State of Illinois in this case.

[2]GCDD as defined by the Act means "non-hazardous, uncontaminated materials resulting from the construction, remodeling, repair, and demolition of utilities, structures, and roads, limited to the following: bricks, concrete, and other masonry materials; soil; rock; wood, including non-hazardous painted, treated, and coated wood and wood products; wall coverings; plaster; drywall; plumbing fixtures; non-asbestos insulation; roofing shingles and other roof coverings; reclaimed or other asphalt pavement; glass; plastics that are not sealed in a manner that conceals waste; electrical wiring and components containing no hazardous substances; and corrugated cardboard, piping or metals incidental to any of those materials." 415 ILCS 5/3.160(a) (West 2012).

[3]CCDD as defined by the Act means "uncontaminated broken concrete without protruding metal bars, bricks, rock, stone, reclaimed or other asphalt pavement, or soil generated from construction or demolition activities." 415 ILCS 5/3.160(b) (West 2012).

inspector for the IEPA, visited the site in December 1995. After inspecting the site, Bruni filed a report indicating that, at the time of inspection, approximately "500,000 cubic yards of wood, asphalt, brick, concrete and scrap metal" had been deposited at the site. A citation was issued to Tri-State for open dumping without a permit.

¶ 8 In 1996, JTE installed an Eagle 1400, which is a large waste processing machine, at the Lynwood site. Janice Einoder then contacted the Bureau of Land (BOL) at the IEPA to notify them that the site was now an operational recycling facility for GCDD and CCDD. JTE submitted a proposal to the IEPA, seeking to have the site designated as a recycling facility. In response to the proposal, Edwin Bakowski, manager of the permit section at the BOL, sent a letter to "J.T. Einoder, Attn: Janice T. Einoder." In the letter Bakowski stated: "Certain recycling activities do not require a Bureau of Land permit, however, facilities not requiring a permit may only receive recyclable materials *** which have an established market and are not mixed with solid waste prior to receipt." The letter noted that the site could operate as a recycling facility without a permit only if JTE revised its proposal and agreed to accept solely CCDD, scrap metal, or harvested or untreated wood. Bakowski noted that, according to JTE's proposal, the site was accepting nonrecyclable GCDD materials in addition to recyclable CCDD materials. According to Bakowski, in this situation—where the recyclable and nonrecyclable materials are comingled prior to their arrival at the facility—*all* of the material is designated as "solid waste" and the facility would require a permit as a "waste transfer station."

¶ 9 The IEPA continued to make inspections of the site and on December 11, 1996, sent a Violation Notice Letter (VNL-1996-01190) to Tri-State and JTE, pursuant to section 31(a)(1) of the Act (415 ILCS 5/31(a)(1) (West 1996)). In the notice, the IEPA alleged that Tri-State and JTE were operating an open dump/solid waste disposal site without a permit in violation of environmental statutes, regulations, or permits. After receiving this notice, John and Janice Einoder, as well as attorneys representing Tri-State and JTE, engaged in numerous phone conversations, written correspondence, and personal meetings with several IEPA representatives in an effort to address the Violation Notice and determine what, if any, permits needed to be obtained and what action needed to be taken for the site to be in compliance with IEPA regulations. No consensus was reached.

¶ 10 According to the record, the Lynwood site received 9,763 loads of waste (nearly all CCDD) during the period of January 1998 to May 1998. All of this waste was deposited at the sand pit as fill so that, by May 1998, the waste had grown into a "hill" which was 40 feet above grade.

¶ 11 In April 1998, new Violation Notice Letters were sent to Tri-State and JTE. In response, John and Janice Einoder again met with IEPA representatives to discuss the alleged violations. Subsequently, the Einoders submitted a remediation proposal to the Agency. That proposal, however, was rejected. As a result, on August 20, 1998, the IEPA sent JTE a Notice of Intent to Pursue Legal Action, pursuant to section 31(b) of the Act (415 ILCS 5/31(b) (West 1996)), stating that the IEPA was "providing this notice because it may pursue legal action against J.T. Einoder for violations of environmental statutes, regulations or permits ***."

¶ 12 After this notice was sent, the agency agreed to postpone litigation until 10 test pits could be dug to determine the content of the material being used as fill. These test pits revealed that the material in the landfill was 99.99% nonhazardous CCDD. Nevertheless, because the pile of

fill continued to grow above grade, the IEPA asked the Attorney General to file a complaint for an injunction and civil penalties against Tri-State and JTE for violations of the Act. See 415 ILCS 5/31(b) (West 2000).

¶ 13    On July 19, 2000, an initial, seven-count complaint was filed by the Attorney General against Tri-State and JTE. The complaint alleged the following violations: (1) open dumping, as defined in section 3.24 of the Act and in violation of section 21(a) of the Act (415 ILCS 5/21(a) (West 2000)); (2) operating a waste disposal facility without a permit, in violation of section 21(d) of the Act (415 ILCS 5/21(d) (West 2000)); (3) developing and operating a solid waste management site without a permit, in violation of sections 807.201, 807.202(a), and 812.101(a) of the Board Waste Disposal Regulations (35 Ill. Adm. Code 807.201, 807.202(a), 812.101(a) (2000)); (4) disposal of waste at an unpermitted facility, in violation of section 21(e) of the Act (415 ILCS 5/21(e) (West 2000)); (5) causing or allowing litter, in violation of section 21(p) (415 ILCS 5/21(p) (West 2000)); (6) failure to properly notify and document the GCDD accepted at the site and failure to limit the percentage of nonrecyclable GCDD, in violation of section 22.38(b) (415 ILCS 5/22.38(b) (West 2000)); and (7) failure to perform a hazardous waste determination, in violation of section 722.111 of the Board Waste Disposal Regulations (35 Ill. Adm. Code 722.111 (2000)).

¶ 14    After the complaint was filed, the State sought a preliminary injunction and temporary restraining order to halt the continued disposal of CCDD at the site. Although the court granted the motion in April 2001, the Lynwood site continued to operate until 2003, when the site finally ceased all operations.

¶ 15    In January 2005, over the defendants' objection, the circuit court permitted the State to file a first amended complaint. In this complaint, John and Janice Einoder were added as party defendants in their individual capacity. Defendants moved for dismissal of the complaint as to the Einoders, arguing that, because the IEPA never sent a statutory "Notice of the Intent to Pursue Legal Action" letter to them in their individual capacity, they were improperly joined and the trial court had no subject matter jurisdiction as to them. In addition, defendants argued that Janice Einoder could not be held personally liable for violations of the Act because she had not been involved in the day-to-day operations of the site. The trial court denied the motion to dismiss the Einoders in their individual capacity, but granted relief on two of the counts. A bench trial was then held on a five-count second amended complaint.

¶ 16    After hearing all of the evidence, the circuit court rejected defendants' arguments and found that Tri-State and JTE, as well as John and Janice Einoder, were each liable for operating a waste disposal site and depositing CCDD above grade without a permit in violation of the Illinois Environmental Protection Act. The circuit court imposed penalties against each of the defendants as follows: Tri-State, $750,000; JTE, $500,000; John Einoder, $500,000; and Janice Einoder, $50,000 (later reduced to $27,300).

¶ 17    In addition to the monetary penalties, the State requested a mandatory injunction, requiring the defendants to remove the above-grade waste pile, which was at that time a 90-foot grass-covered hill composed of 99.99% CCDD. Whether the court could—or should—grant the injunction was a hotly contested issue. Defendants argued that the version of section 42(e) of the Act which was in force at the time of the violations did not allow for mandatory injunctive relief. The State countered that the 2004 amended version of section 42(e), which permits courts to issue mandatory injunctions, applied in this case.

¶ 18	Defendants also argued that, even if the amended statute applied, the trial court should exercise its discretion to refuse to grant the State's request for mandatory injunctive relief. Defendant presented expert testimony showing that removal of the above-grade material from the site would take years and could cost between $65 and $130 million. There also was testimony that the diesel exhaust emitted by the trucks during the removal process would be highly detrimental to the environment and, therefore, removal of the above-grade, nonhazardous CCDD materials would have a greater negative impact on the environment than leaving the landfill as is. Although the State disputed defendant's estimated cost of removal, IEPA's expert, Paul Purseglove, conceded that removal of the approximately 750,000 cubic yards—or 48,000 truckloads—of material could take more than five years and cost approximately $6.8 million.

¶ 19	The circuit court ruled that, pursuant to amended section 42(e), mandatory injunctive relief was available and granted the State's request for a mandatory injunction, ordering defendants to remove all above-grade waste from the site. Defendants appealed to the appellate court, arguing: (1) the IEPA failed to provide John and Janice with notice, as required by section 31(a)(1) and (b) of the Act, which deprived the circuit court of subject matter jurisdiction; (2) the circuit court erred in finding that a permit was necessary for the above-grade disposal of CCDD during the time the Lynwood site was operational; (3) the circuit court erred in finding sufficient evidence to hold Janice Einoder personally liable for violations of the Act; (4) the circuit court erred when it retroactively applied amended section 42(e) of the Act to this case and issued a mandatory injunction requiring defendants to remove all above-grade CCDD at the site; and (5) the penalties and fines imposed were unduly harsh.

¶ 20	As noted above, the appellate court affirmed the circuit court's judgment, with one justice concurring in part and dissenting in part. Justice Mason believed that the 2004 amendment to section 42(e) of the Act (Pub. Act 93-831, § 5 (eff. July 28, 2004)) could not be applied retroactively to this case and, as a result, would have held that the trial court erred in granting the State's motion for mandatory injunctive relief.

¶ 21	Defendants filed a petition for leave to appeal in this court, which we granted.

¶ 22	ANALYSIS

¶ 23	In their opening brief before this court, defendants John and Janice Einoder argued that the circuit court lacked subject matter jurisdiction over them because the IEPA failed to provide them with written notice of intent to pursue legal action, pursuant to section 31(b) of the Act. In their reply brief, however, defendants concede that, based on this court's judgment in *Belleville Toyota, Inc. v. Toyota Motor Sales, USA, Inc.*, 199 Ill. 2d 325 (2002), noncompliance with the notice requirement of section 31 is not a jurisdictional bar. Thus, defendants have withdrawn their argument that the State's failure to comply with section 31(b) of the Act provides a basis for reversal. Defendants also have abandoned the argument, which they raised in the appellate court, that the circuit court erred in finding that a permit was necessary for the above-grade disposal of CCDD during the time the Lynwood site was operational. As a result, there are only two remaining issues to be addressed by this court: (1) whether the 2004 amendment to section 42(e) of the Illinois Environmental Protection Act is applicable in this case and, therefore, the mandatory injunction was properly granted; and (2) whether the circuit court's finding that Janice Einoder's involvement with site operations was sufficient to hold

her individually liable for violations of the Act is against the manifest weight of the evidence. Accordingly, we restrict our analysis to these two issues.

¶ 24                    Retroactive Application of Amended Section 42(e) of the Act

¶ 25    During the time that the Lynwood site was operational, from 1995 until 2003, section 42(e) of the Act (415 ILCS 5/42(e) (West 2002)) provided as follows:

> "(e) The State's Attorney of the county in which the violation occurred, or the Attorney General, may, at the request of the Agency or on his own motion, institute a civil action for an injunction to restrain violations of this Act."

¶ 26    In July 2004, after the Lynwood site had ceased operations and four years after the initial complaint was brought against defendants, the legislature amended section 42(e) of Act to provide as follows:

> "(e) The State's Attorney of the county in which the violation occurred, or the Attorney General, may, at the request of the Agency or on his own motion, institute a civil action for an injunction, prohibitory or mandatory, to restrain violations of this Act, any rule or regulation adopted under this Act, any permit or term or condition of a permit, or any Board order, or to require such other actions as may be necessary to address violations of this Act, any rule or regulation adopted under this Act, any permit or term or condition of a permit, or any Board order." 415 ILCS 5/42(e) (West 2004).

¶ 27    In *People ex rel. Ryan v. Agpro, Inc.*, 214 Ill. 2d 222, 226-32 (2005), we held that under the preamended version of section 42(e) the only injunctive relief available was prohibitory, that is, the restraint of future violations of the Act. The 2004 amendment to section 42(e) changed the law, however, to permit mandatory injunctive relief "to 'require such other actions as may be necessary to address violations of this Act.' " *Agpro*, 214 Ill. 2d at 226 (quoting Pub. Act 93-831, § 5 (eff. July 28, 2004)). Thus, whether it was proper for the circuit court in this case to impose a mandatory injunction requiring defendants to remove all above-grade waste from the Lynwood site depends on whether the 2004 amended section 42(e) applies in this case. The issue to be resolved, therefore, is whether the legislature intended amended section 42(e) to apply prospectively or retroactively. This is a question of statutory construction and, as such, is subject to *de novo* review. *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318 (2006).

¶ 28    The State argues that we should uphold the judgment of the appellate court majority, which found that the circuit court's grant of mandatory injunctive relief was proper because amended section 42(e) could be applied retroactively to this case. Defendants, however, contend that the appellate court majority erred in affirming the circuit court. We agree.

¶ 29    When called upon to determine whether an amended statute may be applied retroactively, Illinois courts are to follow the approach set forth by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). See *Allegis Realty Investors*, 223 Ill. 2d at 330 ("In assessing whether a statute applies retroactively, this court has adopted the approach set forth *** in *Landgraf* [citation]."); *Caveney v. Bower*, 207 Ill. 2d 82, 91 (2003) ("In C*ommonwealth Edison*, this court for the first time adopted the United States Supreme Court's retroactivity analysis, as set forth in *Landgraf* [citation].."); *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 37-39 (2001). Under the *Landgraf* approach, if the legislature has clearly indicated the temporal reach of the amended statute, that expression of legislative intent must be given effect, absent a constitutional prohibition. If, however, the

amended statute contains no express provision regarding its temporal reach, the court must go on to determine whether applying the statute would have a retroactive impact, "keeping in mind the general principle that prospectivity is the appropriate default rule." *Allegis Realty Investors*, 223 Ill. 2d at 330-31.

¶ 30    An amended statute will be deemed to have retroactive impact if application of the new statute would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. *Allegis Realty Investors*, 223 Ill. 2d at 331; *Caveney*, 207 Ill. 2d at 91; C*ommonwealth Edison Co.*, 196 Ill. 2d at 38. If the court finds that retrospective application of the new law would have a retroactive impact or result in inequitable consequences, "the court must presume that the legislature did not intend that it be so applied." *Caveney*, 207 Ill. 2d at 91 (citing *Commonwealth Edison Co.*, 196 Ill. 2d at 38); see also *Landgraf*, 511 U.S. at 280.

¶ 31    In *Caveney*, this court held that Illinois courts will rarely, if ever, need to go beyond step one of the *Landgraf* analysis. This is because an amendatory act which does not, itself, contain a clear indication of legislative intent regarding its temporal reach, will be presumed to have been framed in view of the provisions of section 4 of our Statute on Statutes (5 ILCS 70/4 (West 2000)). *Caveney*, 207 Ill. 2d at 94. Section 4 provides as follows:

> "§ 4. No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding." 5 ILCS 70/4 (West 2000).

¶ 32    Construing this statutory language, we held in *Caveney* that section 4 "represents a clear legislative directive as to the temporal reach of statutory amendments and repeals: those that are procedural in nature may be applied retroactively, while those that are substantive may not." *Caveney*, 207 Ill. 2d at 92.

¶ 33    In the case at bar, the appellate court recognized that "[t]he amendment to section 42(e) does not expressly state that it applies to all cases pending on or before its effective date." 2013 IL App (1st) 113498, ¶ 58. Nonetheless, the court did not consider whether retroactive application of amended section 42(e) would have a retroactive impact, nor did the appellate court apply section 4's presumption of prospective applicability or consider whether the amendment is procedural in nature. Instead, the court went on to find legislative intent by looking to section 2 of the Act, which contains a statement of the Act's purpose and the directive that the Act should be liberally construed. 415 ILCS 5/2(b), (c) (West 2012). In light of the provisions contained in section 2, the court concluded that the amendment to section 42(e) was remedial and, therefore, the legislature intended for it to be applied retroactively. 2013 IL App (1st) 113498, ¶ 59. This was error.

¶ 34    When applying the first step of the *Landgraf* analysis to assess the temporal reach of a statutory amendment, it is not proper to look to the entire statute for legislative intent. Under the first step of *Landgraf*, we are to determine whether the text of the amended provision, itself, clearly expresses the legislature's intent that the amendment be given either prospective

or retrospective application. *Allegis Realty Investors*, 223 Ill. 2d at 330; *Caveney*, 207 Ill. 2d at 94. If the legislature specifies that the amended statute is to be applied retroactively, that directive must be honored, unless it would be unconstitutional to do so. *Allegis Realty Investors*, 223 Ill. 2d at 330; *Caveney*, 207 Ill. 2d at 94. However, where, as here, the legislature does not expressly indicate its intent with regard to the temporal reach of the amended statute, a presumption arises that the amended statute is not to be applied retroactively. The amendatory provision may be applied retroactively, however, if it is merely procedural in nature.

¶ 35    In the appeal before us, no one contests the appellate court's finding that the language of amended section 42(e) requires neither prospective nor retroactive application. The State, however, argues that even if we reject the appellate court's analysis—the finding that the legislature's intent that the amendment be applied retroactively may be found by looking elsewhere in the statute—we should still find that retroactive application of amended section 42(e) is appropriate because it affects only remedies and, as such, is procedural in nature. The State cites *Dardeen v. Heartland Manor, Inc.*, 186 Ill. 2d 291 (1999), in support of its proposition that amendments affecting remedies are procedural.

¶ 36    We find *Dardeen* and the other cases cited by the State to be inapposite. Clearly, amended section 42(e) is not simply procedural. It creates an entirely new type of liability—a mandatory injunction—which was not available under the prior statute. Applying it retroactively here would impose a new liability on defendants' past conduct. For that reason, it is a substantive change in the law and cannot be applied retroactively. See *Caveney*, 207 Ill. 2d at 95 (amendment is a substantive change in the law if it establishes a liability that previously did not exist).

¶ 37    We find that amended section 42(e) may not be applied retroactively to this case. Accordingly, we hold that the circuit court erred when it granted the State's request for mandatory injunctive relief. The mandatory injunction issued by the circuit court is, therefore, vacated.

¶ 38                              Individual Liability of Janice Einoder

¶ 39    As noted above, the circuit court found Janice Einoder, in her individual capacity, liable for violating the Act by operating a waste disposal facility and depositing CCDD above grade without a permit. The court imposed a monetary penalty of $50,000 on Janice Einoder, which was later reduced to $27,300. Defendants contend that the circuit court's finding that Janice Einoder could be held responsible in her individual capacity was against the manifest weight of the evidence and that the appellate court erred in affirming the circuit court's ruling. On this point, however, we disagree.

¶ 40    There is no dispute that corporate officers may be subject to liability for violations of the Act. To impose individual liability on a corporate officer, however, it must be shown that the corporate officer was *personally involved and actively participated in the violation of the Act*, not simply that the individual had personal involvement or active participation *in the company's management*. *People ex rel. Madigan v. Tang*, 346 Ill. App. 3d 277, 283 (2004). A trial court's finding as to a corporate officer's personal liability will be reversed only if it is manifestly erroneous. *People ex rel. Madigan v. Petco Petroleum Corp.*, 363 Ill. App. 3d 613, 623 (2006). A ruling is manifestly erroneous only "if it contains error that is clearly evident,

- 8 -

plain, and indisputable." *People v. Hughes*, 329 Ill. App. 3d 322, 325 (2002). Moreover, because the trial court is in the best position to weigh the evidence and determine witness credibility, its determination is afforded great deference. *Petco Petroleum Corp.*, 363 Ill. App. 3d at 623.

¶ 41 It is true that, in this case, evidence was presented at trial showing that Janice was not part of the day-to-day landfill operations at the site. We find this testimony irrelevant, however, because a corporate officer, to be personally liable, does not have to perform the physical acts constituting a violation. *People ex rel. Ryan v. Agpro, Inc.*, 345 Ill. App. 3d 1011, 1028 (2004). Here, the circuit court found that Janice participated in the violations because she signed over 250 contracts authorizing various companies and individuals to dump CCDD and GCDD at the site. Moreover, she signed many of these contracts after she was aware that the IEPA had cited the landfill operation for violating the Act and after she participated in discussions with IEPA representatives regarding the violation notices. While Janice's involvement may have been minimal in relation to the other defendants, this was reflected in the amount of the penalty imposed.

¶ 42 We find that the circuit court's ruling that Janice's involvement in site operations was sufficiently demonstrated by her authorization of contracts for dumping at the site was not against the manifest weight of the evidence. Therefore, we affirm the circuit court's judgment regarding Janice's liability and the penalty imposed.

¶ 43                                                    CONCLUSION

¶ 44 For the reasons stated above, we affirm the appellate court's judgment with regard to Janice's personal liability. We reverse, however, the appellate court's finding that section 42(e) of the Act may be applied retroactively in this case. Accordingly, we vacate the circuit court's order imposing a mandatory injunction on defendants for the removal of all above-grade waste from the site.

¶ 45 Appellate court judgment affirmed in part and reversed in part.